Nichols *v.* Glover.

*J. Buchanan*, for appellant.

*D. Moss* and *F. M. Trissal*, for appellee.

---

## NICHOLS *v.* GLOVER.

PRACTICE.—*Agreed Statement of Facts in Part, and Finding of Jury in Part. Conclusiveness of Finding.*—Where there is an agreed statement of facts as to part of the matters in controversy, and the disputed matters of fact are by agreement submitted to a jury to find specially, and the evidence is not in the record, but only the agreed statement and the finding of the jury upon the disputed facts, the finding will be, upon appeal, as conclusive upon the parties as though the facts found were agreed upon.

VENDOR'S LIEN.—*Novation.*—*Transfer of Debt and Lien.*—A. sold and conveyed certain land to B., who thereby became indebted for purchase-money, one thousand two hundred and sixty-seven dollars; A. was indebted to C. one thousand two hundred and seventy-five dollars for certain other lands by C. sold to A., which indebtedness was secured by notes and mortgage on the lands; all the parties met and a complete novation took place. A. transferred to C. the amount that B. owed A.; B., instead of giving his notes to A., gave them to C., who surrendered his claim on A. B. failed to pay his notes to C., who brought suit and obtained a decree enforcing his vendor's lien, and purchased under such decree the land so conveyed by A. to B.

*Held*, in a suit for possession by C. against D., who claimed title through one E., who had taken a mortgage with full notice of all the rights and equities of C., that the assignment of the debt itself, without the assignment of the evidence of the debt, carried with it the vendor's lien on the land; and C. was entitled to recover; that it is the unpaid purchase-money which creates the vendor's lien, and it is immaterial to whom the acknowledgment of the debt is made, if it be so made by direction of the vendor.

APPEAL from the Owen Circuit Court.

PETTIT, C. J.—This was a suit by the appellant against the appellee for the possession of real estate and damages for its detention. The complaint was in the proper form. Answer of general denial, and the following agreed statement of facts was used in evidence, together with certain questions put to and answered by the jury:

"It is agreed by and between the parties to this action that the following are facts, and are, for the purpose of this case, to be regarded and treated as true, namely: First, that James Smith was the owner of the land in controversy, and sold and conveyed it to John Beaman, who sold and conveyed it to William D. Alexander, for and in consideration of the sum of seventeen hundred and sixty-seven dollars and ten cents, of which sum he paid five hundred dollars in hand, leaving due and unpaid the sum of twelve hundred and sixty-seven dollars and ten cents; that prior to such sale by Beaman to Alexander, the plaintiff and his brother, William H. Nichols, had sold to the said Beaman another tract of land, for which the said Beaman was indebted to the said Samuel T. Nichols and William H. Nichols in the sum of about twelve hundred and seventy-five dollars, which

was secured by the notes of said Beaman and a mortgage on such land; that at the time when said Beaman made the deed to the said Alexander for the land in controversy, the said Beaman, Alexander, Samuel T. Nichols, and William H. Nichols met together, when it was agreed by and between the said persons that the said Samuel T. and William H. Nichols should surrender to the said Beaman his notes and mortgage, which was to operate as an extinguishment and payment of his indebtedness to them; that the said Alexander should pay to the said Samuel T. and William H. Nichols the amount which he owed to the said Beaman for the unpaid purchase-money of the land in controversy, and should execute his notes therefor, which was to operate as a payment and extinguishment of the indebtedness of the said Alexander to the said Beaman for said land; that in pursuance of the said agreement, the said Samuel T. and William H. Nichols then surrendered up to the said Beaman his notes, and entered satisfaction of said mortgage, and the said Alexander then executed and delivered to the said Samuel T. and William H. Nichols his two promissory notes, each for six hundred and thirty-three dollars and fifty-five cents, due in one and two years after date, and the said Alexander gave no mortgage or personal security to secure the payment of said notes, which said notes were dated the 30th day of December, 1857.

"Second. That Samuel T. and William H. Nichols, on the 5th day of April, 1859, obtained in the Owen Common Pleas Court a judgment and decree rendered on the note due on the 30th of December, 1858, given by the said Alexander to the said Nichols for the unpaid purchase-money of the land in controversy, which said judgment and decree is in the words and figures as follows: 'Samuel T. Nichols *et al. v.* William D. Alexander. Civil action.

"'And now come said plaintiffs, by Franklin and Richards, their attorneys, and by affidavit filed make proof of publication for three consecutive weeks of the proper notice to said defendants in the Owen County Journal, a public weekly

Nichols *v.* Glover.

newspaper of general circulation, printed and published in Owen county, and it appearing that the same has not been sixty days before the first day of the present term, this cause is continued by operation of law.

" 'Samuel T. Nichols and William H. Nichols *v.* William D. Alexander. Civil action.

" 'And now come said plaintiffs, by Franklin and Richards, their attorneys, and proof of publication having been made at the last term of this court of the pendency of this action, as required by the statute, the said defendant, on motion, is three times called, but comes not, and herein wholly makes default, and this cause is now submitted to the court for trial, on complaint, default, and proof; and the evidence being heard, the court finds that said plaintiffs ought to recover of said defendant the sum of six hundred and forty-six dollars ($646), the amount found due on the promissory note filed with said complaint. And the court further finds that said note was given by said defendant for and in part considera-tion of the land described in said complaint, to wit: Com-mencing nine poles and six links east of the north-west corner of fractional section two (2), township ten (10), range three (3) west, and running thence east on township line one hundred and thirty-two poles to a stake, thence south sixty-three poles to White river, thence with the meanderings of said river to the south-east corner of a tract of land hereto-fore set off by commissioners to John Smith, in accordance with the will of Samuel Smith, thence north to the place of beginning; and the court finds that said sum being for the purchase-money ought to be a lien on said premises.

" ' It is, therefore, considered by the court that said plaintiffs recover of said defendant said sum of six hundred and forty-six dollars ($646), the damages aforesaid, together with the costs of this suit, all to be collected without relief from val-uation or appraisement laws; and it is further considered and ordered that said judgment be, and the same is hereby de-clared to be, a lien on the premises hereinbefore described, and that said premises, or so much thereof as is necessary,

be sold by the sheriff, as other property is sold on execution, to satisfy the said judgment and costs of suit, as well as accruing costs and interest due at the time of such sale.'

"Third. That an execution and order of sale was issued by the clerk of said court, directed to the sheriff of said county, who, by virtue thereof, levied on and advertised the land in controversy for sale, and on the 12th day of November, 1865, in due form of law, sold the said land, under and by virtue of said execution and order of sale, to the plaintiff, Samuel T. Nichols, and on the said day, in due form of law, made and delivered to him a deed for said land.

"Fourth. That the said William D. Alexander, on the 19th day of April, 1858, mortgaged the lands in controversy to Hezekiah Wampler, which mortgage was recorded.

"Fifth. That said Wampler, on the — of May, 1859, by the decree of the Owen Circuit Court, obtained a decree of foreclosure of the said mortgage, and an order for the sale of the land in controversy.

"Sixth. That on the — of ——, 185–, a copy of the said decree was issued by the clerk of the said court, directed to the sheriff of said county, who, by virtue thereof, advertised the land in controversy for sale, and on the — of ——, 1859, said sheriff, in due form of law, sold the land in controversy to said Wampler, and made to him a deed therefor.

"Seventh. That the said Wampler, on the — day of ——, 1864, sold and conveyed the lands in controversy to the defendant, who entered into the possession of said land, and has continued in the possession thereof to the present time. It is further agreed by the said parties that the disputed facts in this case shall be submitted to a jury, who are to find the facts specially upon the said disputed facts. August 11th, 1869."

By the agreement of the parties a jury was empanelled, evidence heard, and the following questions were put to and answered by the jury:

1. Did H. Wampler, deceased, have notice that the notes given by Wm. D. Alexander and brother were given in part

payment for the land in controversy at the time the mortgage from Alexander to Wampler was executed? Answer. Yes.

2. If yes, at what time was such notice given? Answer. About the middle of March, 1858.

3. What is the rental value of the lands since they came into the possession of defendant Glover? Answer. Nine hundred and twelve dollars and fifty cents.

Upon the agreed state of facts and these findings or answers to the questions, the cause was by the parties submitted to the court for trial, and the court found for the defendant.

The plaintiff moved for a new trial for the following causes: First, that the finding of the court is contrary to law; second, that the finding of the court is not sustained by sufficient evidence. The motion was overruled, and exception properly taken, and final judgment was rendered against the appellant.

The only error alleged is the overruling of the motion for a new trial. Was this ruling erroneous?

We proceed to epitomize and state in chronological order the evidence as shown by the agreed state of facts and by the findings of the jury.

1. Samuel T. and William H. Nichols were the joint owners of a tract of land in Owen county, which they sold and conveyed to John Beaman; that Beaman was indebted to them for the unpaid purchase-money of the said land in the sum of about twelve hundred and seventy-five dollars, which was evidenced by notes and secured by a mortgage on the said premises.

2. The said John Beaman was the owner of the premises in controversy, and on the 30th day of December, 1857, he sold the same to William D. Alexander, for the sum of seventeen hundred and sixty-seven dollars and ten cents, of which he paid in cash five hundred dollars, leaving due twelve hundred and sixty-seven dollars and ten cents; that prior to the execution of the deed, Samuel T. and William H. Nichols,

William D. Alexander, and John Beaman met together, when it was agreed by and between the said parties, that Alexander should pay to the said Nichols the balance due from him to Beaman on the unpaid purchase-money for said premises, and this was to extinguish the indebtedness of Alexander to Beaman; that in consideration thereof the said Alexander agreed to pay the said sum to Nichols, and Nichols agreed to surrender to the said Beaman his notes and enter satisfaction of his mortgage; that in pursuance of the said agreement, the said S. T. and W. H. Nichols surrendered to the said Beaman, as satisfied, his notes, and entered satisfaction of the said mortgage, and the said Alexander then executed and delivered to the said Samuel T. and William H. Nichols his two promissory notes, each for the sum of six hundred and thirty-three dollars and fifty-five cents, payable in one and two years from date.

3. William D. Alexander, on the 19th day of April, 1858, mortgaged the lands in controversy to Hezekiah Wampler.

4. Samuel T. and Wm. H. Nichols, on the 5th day of April, 1859, obtained in the Owen Common Pleas Court a judgment on the note executed by Alexander to them, and which was due December 30th, 1858, against the said Alexander, for the sum of six hundred and forty-six dollars, and decree that the plaintiff held a vendor's lien on the premises in controversy, and that they should be sold to satisfy the said judgment.

5. The said Hezekiah Wampler, on the — day of May, 1859, obtained in the Owen Circuit Court a decree against the said Alexander, foreclosing the said mortgage and ordering the sale of the premises in controversy.

6. The sheriff of Owen county, on the — day of ——, 1859, in due form of law, sold the said premises, under the said decree of foreclosure, to the said Hezekiah Wampler, and executed to him a deed therefor.

7. Hezekiah Wampler, on the — day of ——, 1864, sold and conveyed the premises in controversy to the appellee, Andrew J. Glover, and placed him in possession, and he has

remained in possession thereof ever since, and is now in possession of the same, and has received the rents and profits thereof since his purchase.

8. The sheriff of Owen county, on the 12th day of November, 1865, under and by virtue of an order of sale, issued on the said judgment and decree, rendered in favor of the said Samuel T. and Wm. H. Nichols, and against the said Alexander, sold the premises in controversy to the appellant, and executed to him a deed therefor.

9. The parties being unable to agree whether the said Wampler, at the time he took the mortgage on the premises in controversy, had notice that the purchase-money for said premises was due and unpaid, and as to the rental value of said premises since the same had been in the possession of the appellee, the said questions were, by the agreement of said parties and the direction of the court, submitted to a jury, with directions to find the facts specially. The jury, in answer to questions submitted by the court, found that Wampler had notice; that William D. Alexander was indebted to the said S. T. and W. H. Nichols for the unpaid purchase-money for said premises, at and before the time when he took his mortgage on the said premises; and that the rental value of said premises, from the time when the appellee took the possession thereof up to the time of the trial, was nine hundred and twelve dollars and fifty cents.

10. This case was, upon the agreed state of facts, and the facts specially found by the jury, submitted to the court for trial and decision.

The court found for the appellee. The appellant moved the court for a new trial, and assigned as reasons therefor, that the finding of the court was contrary to law, and was not sustained by sufficient evidence. The court overruled the motion, and rendered a final judgment for the appellee. The appellant excepted, and appeals to this court.

There is no controversy as to any question of fact. The material facts were either agreed upon or found by the jury. The evidence adduced before the jury, upon the disputed

questions of fact, is not in the record. The finding of the jury is as conclusive upon the appellee as though the facts found were agreed upon. The case, then, stands thus: John Beaman was the absolute owner in fee simple of the lands in dispute; he sold and conveyed to Alexander; Alexander owed him, for the unpaid purchase-money, the sum of twelve hundred and sixty-seven dollars and ten cents. Beaman was indebted to Samuel T. and Wm. H. Nichols in the sum of twelve hundred and seventy-five dollars, for lands by them sold to him, and which was secured by notes and mortgage on such lands. All the parties met together, when a complete novation took place. Beaman, for the purpose of paying his own debt, transferred to Nichols the amount that Alexander owed him; Alexander, instead of giving his notes to Beaman, gave them to Nichols. The Nicholses surrendered their claim on Beaman; Alexander did not pay his notes to Nichols; they brought suit, obtained a judgment and decree enforcing a vendor's lien, took out execution and order of sale, under and by virtue of which the lands in dispute were sold and purchased by the appellant, who obtained a deed, under which he claims to be the owner and entitled to the lands in dispute. The appellee claims title through Wampler, who took a mortgage with full notice of all the rights and equities of the appellant.

It is conceded that Beaman had a lien upon the lands in dispute for his unpaid purchase-money, and that if Alexander had executed his notes to Beaman and had assigned them to Nichols, Beaman's vendor's lien would have been transferred to them; but it is claimed that, because the debt itself, and not the evidence of the indebtedness, was assigned and transferred, this did not carry with it the vendor's lien. This is the principal question in the case. If the arrangement between the parties transferred to the Nicholses the vendor's lien which Beaman had on the land, and Wampler took his mortgage with notice thereof, then the appellant has a prior lien, equity, and title, and is entitled to recover possession of the lands and damages for their use and occu-

pation. If, however, the vendor's lien was waived or abandoned, then the appellee has the prior and paramount title, unless the proceeding in the Owen Common Pleas Court, in the action of Samuel T. and William H. Nichols against W. D. Alexander, in which the court decrees a vendor's lien, is a proceeding *in rem;* for if it is, it is binding and conclusive upon Wampler and all who claim under him.

The law in this State is too well settled to justify citing authorities, that a vendor of real estate has a lien for unpaid purchase-money, whether he takes a note or not, and that his lien is transferable or assignable, by a written instrument when no note is given, or assignable when a note is given; and that this lien may be waived expressly, or by taking collateral security of the vendee, or the personal obligation of a third person as security for the payment of the purchase-money.

The question in this case resolves itself into this: If A. owes B., and A. conveys land to C. and has a lien for the purchase-money on the land so conveyed, and they all meet together and agree that C. shall execute his note to B. for the unpaid purchase-money, instead of giving the note to A., which is done, and B. releases A. from his debt, has B. a lien on the land conveyed by A. to C. for the purchase-money? We hold that he has. It is clear that if C. had given his note to A. for the unpaid purchase-money, A. might have assigned it to B., and thus transferred his vendor's lien to B. Or, if no note had been given by C. to A. for the purchase-money, yet A. might have, by a written instrument, assigned his vendor's lien to B.

The fact that, by the agreement of all parties, the note was made by the vendee to a third person to pay the vendor's debt to him, and not to the vendor and by him assigned to the third person, cannot release the vendee from the lien. The counsel on both sides have written long, learned, and able briefs, but we do not deem it necessary to animadvert on them or the citations. The appellee contends,

that, because the note for the purchase-money was not given directly to the vendor, though at his instance it was given to another, no vendor's lien attaches. While on the other side, it is contended that it is the unpaid purchase-money which creates the lien, and is the debt, and that it is no matter to whom the acknowledgment of that lien is given by the vendee, if it is at the request and consent of the vendor, or by the agreement of the vendor and vendee. Out of numerous authorities that the latter view is correct, we cite but three. In *Kern* v. *Hazlerigg*, 11 Ind. 443, the court say and hold: "The debt is regarded as the principal, and the lien a mere incident; and the transfer of the debt carries with it the incident, in the same manner as the transfer of a debt secured by mortgage carries with it the mortgage security." *Honore's Ex'r* v. *Bakewell*, 6 B. Mon. 67, and *Wiseman* v. *Hutchinson*, 20 Ind. 40, are directly in point.

The evidence being all written, we can judge of it as well as the court below, and we hold that on it the court erred in its finding and judgment, and there being no reason or necessity for a new trial, and having by law the power and right to order the court below to enter the proper judgment, we reverse the judgment, and direct the court below to render a finding and judgment for appellant (plaintiff below) for the possession of the lands, and for nine hundred and twelve dollars and fifty cents, the amount found as the rental value of the lands since the defendant (appellee) has been in possession of them, and at the costs of the appellee.

BUSKIRK, J., having been of counsel, was absent.

*S. H. Buskirk, J. C. Robinson, W. E. Dittemore,* and *S. Curtis,* for appellant.

*C. F. McNutt, W. A. Montgomery,* and *G. W. Grubbs,* for appellee.