WILLIAM CHUSTAK, ET AL. *v.* NORTHERN INDIANA
PUBLIC SERVICE COMPANY.

[No. 1270S314. Filed October 18, 1972.]

*Duane W. Hartman, Glenn J. Tabor, Blachly, Tabor & Bozik,* of Valparaiso, for appellants.

*George Douglas, Douglas, Douglas & Douglas,* of Valparaiso, *Richard W. Johnson, William H. Eichhorn, Schroer, Eichhorn & Morrow,* of Hammond, for appellee.

PRENTICE, J.—This is an appeal from the order of the trial court permitting the plaintiff (appellee) to appropriate a right-of-way 150 feet in width for electrical transmission and distribution lines upon, through and over the lands of the defendants (appellants). Defendants here seek to reverse the order of the trial court, contending that it erred in the following respects:

(1) In failing to order the plaintiff to produce certain documents;

(2) In permitting an appropriation for "lines," whereas the evidence disclosed only that one 345 KV line is needed.

The complaint herein was filed on October 7, 1970, and by summons the defendants were notified on October 27, 1970 to appear on November 2, 1970 and show cause, if any, why the property sought to be condemned should not be appropriated. Although not affirmatively disclosed by the record, it appears that the parties and the court agreed to continue the hearing date to November 12, 1970. On November 9, 1970, the defendants mailed to the plaintiff a request to produce, as follows:

"November 9, 1970

Mr. William Eichhorn
Schroer, Eichhorn & Morrow
Attorneys at Law
5243 Hohman Avenue
Hammond, Indiana
      Re:   Northern Indiana Public Service Company
      Vs.   William Chustak et al.
           Cause #70-PSC-1704

Dear Mr. Eichhorn:
I herewith request the opportunity to examine and make copies of writings; drawings; written documents, including memoranda; and contracts in connection with the captioned case as the same pertains to the following:

(1) All specifications for electrical transmission towers to be constructed and located upon the defendant's real estate.

(2) Contracts, letters, memoranda, notes, and any written material relating to the construction of the aforementioned electrical transmission towers.

(3) Any and all written documents pertaining to the determination of the width of the right-of-way sought to be appropriated as the same may be needed for either construction purposes or maintenance purposes.

(4) All specifications relating to the electrical transmission line, including conductors, that may be found to exist upon the real estate sought to be condemned.

If I may have this information prior to 11:00 o'clock A.M. on Thursday, November 12, 1970, in Valparaiso, Indiana, I would anticipate no need to continue the hearing on the appropriations.

Further I would request the identity of the contractors who will construct the line, if that is known; and if that is not known, the name of the contractor who is likely to construct the line. Further I would like to know the identity of the consultants, if any, who designed the line or assisted in the design of the line.

If all or any part of this request is met with a negative response I will appreciate being notified of this fact by telephone call so that the proper pleadings may be prepared for filing late Tuesday or early Thursday morning.

Unfortunately the courthouse will be closed on Wednesday.

Yours truly,
BLACHLY, TABOR & BOZIK
Attorneys at Law
By: Glen J. Tabor
GJT:sh
cc: Mr. Herbert Douglas
Honorable Judge Willis
John Ruge, Clerk of the Court"

On November 12, 1970 the defendants appeared and filed their objections to the appropriation and a motion to produce, said objections and motion being as follows:

"OBJECTION

Now comes the defendant by counsel, Blachly, Tabor & Bozik by Glenn J. Tabor, and with his appearance files objection to plaintiff's right of eminent domain in the following particulars, to-wit: namely that the real estate sought to be condemned by the plaintiff exceeds its needs for its contemplated use as set forth in the complaint; and as a consequence, the planitiff's conduct is arbitrary, capricious, and unlawful."

"MOTION TO PRODUCE

Now comes the defendant by counsel, Blachly, Tabor & Bozik by Glenn J. Tabor, and shows the Court that a request was made upon the plaintiff for production of documents, which request was denied and that those same documents are needed to enable the defendant to prepare a defense to the request for appropriations of a right-of-way through defendant's land, and that the hearing on defendant's ob-

jections be continued until such time as the following documents are produced and defendant's attorney has had the opportunity to examine the same, said documents being described as follows, to-wit: (see attached letter)."

The parties proceeded to an evidentiary hearing upon the objections, without having obtained a ruling upon the motion to produce, at the conclusion of which the court ordered the appropriation and appointed appraisers.

(1) There is nothing in the record to show whether the defendants' aforesaid written motion to produce was overruled or withdrawn. No ruling appears. We cannot assume that the court overruled the written motion; and by proceeding without protest and without a ruling, Defendants waived any error that might otherwise have been averted. *Barnes* v. *State* (1971), 255 Ind. 674, 266 N. E. 2d 617; *Wilhoite* v. *State* (1971), 255 Ind. 599, 266 N. E. 2d 23; *Brown* v. *State* (1970), 255 Ind. 47, 262 N. E. 2d 515.

The defendants contend by their reply brief that the court reserved its ruling upon the motion for pre-trial discovery and refers us to transcript Page 90, which does reflect that the court reserved its ruling upon a motion of the defendants. We do not interpret such reservation as having been addressed to the pre-trial discovery motion, however, but rather to the defendants' in-trial motion made moments earlier and reflected at transcript Page 84. This motion was to require the plaintiff to produce certain books, which were later obtained and are hereinafter mentioned. Referring to such motion, we are somewhat confused by counsel's colloquy, "At this point I will renew my motion to produce documents listed in the motion * * *." Notwithstanding the use of the word "renew," we view it as an in-trial motion to produce and not as a refiling of the pretrial motion, which was the only motion previously filed. The pre-trial motion being for the purpose of trial preparation, we are unable to perceive how it could be entertained during the course of a trial. Nor are we able to conclude from such

colloquy whether the pre-trial motion had been previously ruled upon, withdrawn or waived. The record in these particulars leaves much to the imagination, and we must acknowledge that our conclusions here stated may be inaccurate. If so, however, we remind the defendants that they have the burden of presenting a correct and clear record of the proceedings and that we are required to resolve ambiguities in favor of the judgment of the trial court.

There is an additional reason for ruling against the defendants upon this proposition, however. The true spirit of the new discovery rules may be described as two fold: 1) to provide for a minimum of court involvement in the discovery process and, 2) to allow for a more liberal discovery procedure. In the instant case the defendants were seeking discovery of the plaintiff's computations as to the width of the required right-of-way. These computations were not made in preparation for litigation, but rather in the ordinary course of the utility's business. The discovery of such items is controlled by Trial Rule 34. Under Trial Rule 34(A)(1) the computations were discoverable. Trial Rule 34(A)(1) provides:

"(A) Scope. Any party may serve on any other party a request:

(1) to produce and permit the party making the request, or someone acting on his behalf, to inspect and copy, any designated documents (including, without limitation, writings, drawings, graphs, charts, photographs, phono-records, and other data compilations from which intelligence can be perceived, with or without the use of detection devices) or to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(B) and which are in the possession, custody or control of the party upon whom the request is served;"

Trial Rule 34(B) provides the procedure to be followed:

"(B) Procedure. The request may, without leave of court, be served upon the plaintiff after commencement of the action and upon any other party with or after service

of the summons and complaint upon that party. The request shall set forth the items to be inspected either by individual item or by category, and describe each item and category with reasonable particularity. The request shall specify a reasonable time, place, and manner of making the inspection and performing the related acts. Service is dispensed with if the whereabouts of the parties is unknown.

The party upon whom the request is served shall serve a written response within a period designated in the request, not less than thirty [30] days after the service thereof or within such shorter or longer time as the court may allow. The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless it is objected to, in which event the reasons for objection shall be stated. If objection is made to part of an item or category, the part shall be specified. The party submitting the request may move for an order under Rule 37 (A) with respect to any objection to or other failure to respond to the request or any part thereof, or any failure to permit inspection as requested."

If the request for discovery is denied, the party making the request may move under Trial Rule 37 for an order compelling discovery. Trial Rule 37 (A) provides, in pertinent part:

"(A) Motion for order compelling discovery. Upon reasonable notice to other parties and all persons affected thereby, a party may apply for an order compelling discovery as follows. * * *."

If the item sought to be discovered falls within the scope of the discovery rules and the moving party has complied with the procedural requirements, the court is to grant such motion, subject, of course, to protective orders, if appropriate, under Rule 26 (C). *Collins* v. *Bair* (1971), 256 Ind. 230, 268 N. E. 2d 95.

Applying the rules above set forth to the instant case, this Court can not say the defendants acted reasonably under Trial Rule 34 (B) in waiting until November 9, 1970 to write the letter requesting discovery. This is especially true under the circumstances of this case because the defendants knew

that the hearing was slated for November 12, 1970. Further, Trial Rule 37 (A) requires reasonable notice to all affected persons. Here the defendants, by waiting until the day of the hearing seem to flaunt the requirement of reasonable notice. A party may not wait until the last possible moment to act, then rely upon the discovery rules and expect the court to halt its proceedings in order to accommodate his motion. The defendants had notice of the proceedings on October 27, 1970. Their proper course of action would have been seasonably to request discovery and ascertain whether or not the utility company would allow them to examine the requested materials and computations. Trial Rule 34 (B) provides that the party from whom discovery is sought shall have thirty (30) days in which to reply. Therefore, the proper procedure for the defendants would have been to request the court to require a reply in a shorter period or move to have the hearing postponed.

As previously stated, the defendants waived error addressed to the denial of their written motion for discovery. A later discovery motion was made, however, and although it does not clearly appear that the defendants have properly raised any question concerning the rulings thereon, the issue is so closely tied to the one raised by the ruling upon the written motion that we think we should go to it. Following the filing of the written motion, the parties proceeded with the hearing, and the next mention of discovery came after the hearing was under way and Plaintiff's expert witness was being cross examined. At that point, the defendants' counsel announced:

> "At this point I will renew my motion to produce documents listed in the motion together with now asking the court to order them to produce for me the documents that this person said he had reference to in formulating and understanding his determination in his mind and his opinion with regard to the width of the right-of-way.
>
> I am talking about a book that he referred to that— I think a book that was raised in the courtroom called Safety Rules, and other documents that he referred to.

That is, as a matter of fact, as much a part of his testimony as his opinions. He has made direct and specific reference to them and for my cross-examination to be meaningful I ought to have access to those documents so that I can ask him questions.

THE COURT: Now, you are not renewing your motion generally, you are renewing it as to this book?

MR. TABOR: As to this book which I am touching called the Safety Rules and the other documents that he said on direct examination that he made reference to, all of those documents for purposes of cross-examination."

From the oral motion, above recited, it would be difficult to determine just what the defendants wanted or what they were entitled to receive. However, from the colloquy that followed it may be determined that what was wanted was a book (or books) referred to as "standards" and the plaintiff's computations supporting its decision that a right-of-way of 150 feet was required. The court ordered the production of the "standards" and continued the hearing to the following afternoon to give Defendants time to review them. The reason for the production order was that the witness had testified that his testimony was given in reliance upon them as opposed to information within his own knowledge. The court declined to order production of the plaintiff's computations during the course of the trial, theorizing that there was nothing about them that was required to enable the defendants' engineer to make their determination as to the reasonableness of the proposed appropriation. We find no fault with this ruling. Although we think the defendants may have been entitled to obtain such computations under a proper and timely pre-trial motion, the trial judge has broad discretion with respect to the discovery he will permit during trial.

(2) Defendants have conceded that the decision of the trial court was supported by sufficient evidence to condemn a 150 foot easement for one 345 KV transmission line, but seeks to set the order aside upon the grounds that the order does not

so limit the use of the easement. This appears to us to be an objection different from that raised in the trial court, which was addressed not to the extent to which the easement sought would be used but rather to the quantity of the defendants' land that would be required.

A question cannot be raised on appeal unless a proper and timely objection was made in the trial court. *Warner* v. *Reed* (1916), 62 Ind. App. 544, 113 N. E. 386; *Helms* v. *Cook* (1916), 62 Ind. App. 629, 111 N. E. 632; *Barnes* v. *State, supra*; *Wilhoite* v. *State, supra*; *Brown* v. *State, supra*.

Appellants insist that their objection in the trial court and their assignment of error to this Court raised this question, but we cannot agree. The objection stated "* * * the *real estate* sought to be condemned * * * *exceeds* its needs * * *." The assignment of errors was, "The court erred in overruling Defendant-Appellants' objection, which objection contended that Plaintiff-Appellee was condemning *more real estate than it needed* for the use contemplated." (Our emphasis) The question presented was clearly one of quantity of land to be impressed with the easement and not the extent of the servitude. Whether or not the plaintiff may, at some future time, burden the easement with lines in addition to the 345 KV one is an issue not here considered.

Affirmed.

Arterburn, C.J., and DeBruler, Givan and Hunter, JJ., concur.

NOTE.—Reported in 288 N. E. 2d 149.